IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEFFREY BELCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 09-2299-KHV-GBC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the administrative law judge's (ALJ) residual functional capacity (RFC) assessment, the court recommends the decision be REVERSED and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

**I. Background**

Plaintiff applied for SSI on September 30, 2005 alleging disability since March 25, 2004. (R. 11). His application was denied initially and upon reconsideration, and plaintiff requested a hearing before an ALJ. Id. Plaintiff's request was

granted, and plaintiff appeared with counsel for a hearing before ALJ Milan M. Dostal on July 22, 2008. (R. 11). At the hearing testimony was taken from plaintiff and from a vocational expert. (R. 11, 367-68). On October 20, 2008, the ALJ issued a decision in which she found plaintiff is not disabled within the meaning of the Act, and denied his application. (R. 11-18). Plaintiff disagreed with the decision, but was denied review by the Appeals Council. (R. 3-5). The decision is the final decision of the Commissioner, and plaintiff now seeks judicial review. Id. at 3; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).

**II. Legal Standard**

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor

substitute [its] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under

a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920. This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether, when considering vocational factors (the claimant's age, education, and past work experience), he is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff asserts four errors in the ALJ's decision: (1) The ALJ failed to consider all of plaintiff's impairments in assessing RFC. (Pl. Br. 8-12). (2) Substantial evidence does not support the findings that plaintiff's pain and plaintiff's mental impairments can "be controlled by appropriate medication without significant adverse side effects." (Pl. Br. 12-14)(quoting (R. 13, 14)). (3) The ALJ erroneously ignored the GAF score of 45[1] assessed by Dr. Bruce Bean; and (4) the ALJ erroneously credited the February 2006 RFC assessed by the state agency consultants over the opinion of Dr. Edwards, plaintiff's treating physician. (Pl. Br. 14-17). The Commissioner argues that (1) the ALJ considered all of plaintiff's impairments; (2) the ALJ gave plaintiff the benefit of the doubt by including mental limitations in the RFC assessed, and assessed plaintiff with significant RFC limitations because of pain; (3) the ALJ

---

[1]Global Assessment of Functioning. A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. Text Revision 2000). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 34. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

GAF scores in the range of 41-50 indicate "**Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning.**" Id.(emphasis in original).

considered and evaluated Dr. Bruce Bean's opinion, and although she did not specifically mention the GAF score, an ALJ need not discuss every piece of evidence; and, (4) the ALJ properly considered Dr. Edwards's opinion. The court agrees with plaintiff that substantial evidence in the record as a whole does not support the ALJ's findings that plaintiff's pain and mental impairments can be controlled by medication without significant adverse side effects. Remand is necessary for a proper RFC assessment either without these unsupported findings or by properly pointing to medical authority or to record evidence which supports the presently-unsupported findings. Finding error necessitating remand in the RFC assessment, the court will only briefly address the other errors alleged by plaintiff.

## III. Discussion

### A. The ALJ's RFC Assessment

The ALJ found that plaintiff has the exertional RFC for a range of light work with certain postural and environmental limitations not at issue here. (R. 13). She also found nonexertional limitations:

> The claimant has slight pain or it can be controlled by appropriate medications without significant adverse side effects. The claimant has a decrease in concentration and reading capacity and borderline intellectual functioning. He has moderate ability to carry out detailed instructions and moderate impairment with respect to working with the general public and with co-workers. The claimant has moderate mental impairments that are or could be controlled by

>     appropriate medications without significant adverse
>     side effects.

(R. 13-14).

In analyzing the RFC assessment, the ALJ considered the credibility of plaintiff's allegations regarding symptoms. (R. 14-15). The ALJ noted plaintiff's testimony that his pain medications do not stop his pain; he has pain on the right side of his body and uses a cane to get around; he has pain in the right knee and arthritis in the right hand; and his pain has caused sleeping problems. Id. at 14. The ALJ also noted the report of plaintiff's friend that plaintiff complains of pain in his leg and hand, and that plaintiff is very distracted by his pain. Id. The ALJ found that plaintiff has impairments which could be expected to produce pain, but that plaintiff's allegations of pain "are not credible to the extent they are inconsistent with the residual functional capacity assessment <u>for the reasons explained below</u>." (R. 15)(emphasis added). She stated, "The objective medical evidence fails to fully support the claimant." Id.

The ALJ discussed and summarized the medical opinions. (R. 15-16). She noted that a psychologist, Dr. Bruce Bean, had examined and evaluated plaintiff, finding cognitive functioning in the borderline to low average range, significant weakness in reading skills, alcohol and marijuana abuse, rule out bipolar disorder or other disorder associated with anger and temper

control issues, and possible underlying personality disorder, not otherwise specified. (R. 15). She noted the state agency consultants opined that plaintiff was moderately limited in the abilities to understand, remember, and carry out detailed instructions; and to interact appropriately with the general public. Id. She also discussed the records and opinion of plaintiff's treating physician, Dr. Edwards. (R. 15-16). She acknowledged: Dr. Edwards's report of a tear of the meniscus of the right knee, with failure of arthroscopic surgery resulting in a need for total knee replacement; Dr. Edwards's opinion that plaintiff should "receive disability;" and her report of atypical chest pain, dyspnea on exertion, and fatigue. Id. at 16.

The ALJ credited the opinions of the state agency consultants over the opinion of Dr. Edwards. Id. She applied the psychiatric review technique; found moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; no restrictions in activities of daily living, and no episodes of decompensation. Id.

### B.  Analysis

The ALJ acknowledged allegations of pain and mental impairments, and acknowledged medical records and medical opinions relating to pain and to mental impairments. She specifically acknowledged: plaintiff's assertion that medications do not stop his pain and pain causes sleep problems;

-8-

plaintiff's friend's report that plaintiff is very distracted by pain; Dr. Bruce Bean's suggestion of bipolar disorder or other disorder associated with anger and temper control issues, and possible underlying personality disorder issues; and Dr. Edwards's report of failure of arthroscopic surgery requiring total knee replacement, bilateral lower extremity pain, and atypical chest pain.

The ALJ did not point to (and the court's review has not found) record evidence demonstrating that plaintiff's pain is "slight" or that it can be controlled by appropriate medications without significant side effects. The ALJ discounted the credibility of plaintiff's and his friend's reports of pain, but she acknowledged Dr. Edwards's report of failed arthroscopic surgery necessitating total knee replacement, and found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (R. 14). She did not explain how she determined from this information or other record evidence that plaintiff's pain was only "slight," or that it could be controlled by medication without significant adverse side effects. Perhaps, in finding that plaintiff's pain can be controlled by medication, the ALJ is relying upon medical authority or a medical opinion. However, she does not cite to such medical authority or medical opinion either in the record evidence or in another form which may be properly relied upon.

She may not "make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and <u>not due to . . . her own credibility judgments, speculation or lay opinion</u>." <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted; emphasis in original).

The Commissioner does not attempt to controvert plaintiff's argument. Rather, he argues that the ALJ assessed significant RFC limitations and "included all limitations necessary to account for Plaintiff's pain." (Comm'r Br. 20). Like the ALJ, the Commissioner's argument also fails to explain how the limitations assessed properly account for plaintiff's pain. The Commissioner argues that Dr. Alica Bean stated plaintiff can undergo exercise testing and participate in an exercise program, and that this ability is inconsistent with allegations of disabling pain. (Comm'r Br. 20)(citing (R. 358)). This argument fails for two reasons, first, the ability to exercise for several minutes, or even for several hours a day, does not equate to the ability to work on a continuous basis, and does not explain what effects plaintiff's pain will have on the various physical and mental functions involved in work on a continuous basis. Remand is necessary for a proper explanation. Second, the Commissioner's argument was not relied upon by the ALJ and, therefore, constitutes merely <u>post hoc</u> rationalization for the

ALJ's decision, upon which the court may not rely to affirm the decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Allen, 357 F.3d at 1145; Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). Although the ALJ cited to Dr. Alica Bean's treatment notes, she did not even mention the ability to exercise, and did not attempt to explain how the evidence related to a finding that plaintiff's pain is "slight" or can be controlled by medication. (R. 16)(citing Ex. 7F/3-4(R. 357-58)).

In like manner, the ALJ's finding that plaintiff's moderate mental impairments "are or could be controlled by appropriate medications," is unsupported by the record. (R. 14). Once again, the ALJ did not point to (and the court's review has not found) record evidence showing plaintiff's mental impairments are or could be controlled by medications. This appears to be merely the ALJ's lay opinion, which she has not supported by citation to record evidence, or to admissible medical authority.

The Commissioner points to record evidence: that plaintiff has not sought regular psychiatric treatment and has had no psychiatric hospitalizations, that Dr. Alica Bean noted no "depression, anxiety, or agitation," and that plaintiff has no ongoing treatment relationship with a mental health professional. (Comm'r Br. 19)(citing (R. 358, 364)). He argues based on this record, that the ALJ was generous when she included significant mental RFC limitations, and she "properly determined the effects

of Plaintiff's mental impairments in his RFC assessment and thoroughly discussed Dr. Bruce Bean's consultative examination of Plaintiff." (Comm'r Br. 19-20). As discussed above, the court may neither formulate nor rely upon a post hoc justification of the Commissioner's decision. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). The court is without authority to weigh the evidence in the first instance, or substitute its judgment for that of the Commissioner. Cagle v. Califano, 638 F.2d 219, 220 (10th Cir. 1980)(citing Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)); see also, Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)("this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration"). Moreover, although the Commissioner asserts that the ALJ "thoroughly discussed" Dr. Bruce Bean's report, the court notes that the ALJ's summary did not include any information from the "CAPABILITY:" section of the report, where Dr. Bruce Bean stated that plaintiff's "potential for competitive employment would seem to be somewhat impacted by his current level of functioning;" that he "would have difficulty developing and maintaining relationships, especially with authority and authority figures;" that he would have the ability to "perform tasks at least of a simple nature, given appropriate training and

monitoring and supervision;" but that "his ability or willingness to sustain effort and concentration over the course of an eight-hour day would likely be somewhat limited."  (R. 221).  Therefore, remand is necessary for the Commissioner to properly assess plaintiff's RFC and support his assessment with citation to substantial evidence in the record or to other appropriate admissible authority.

## C. **Plaintiff's Remaining Arguments**

Plaintiff may present his argument regarding consideration of specific impairments and how those impairments impact his ability to perform basic work activities, to the Commissioner on remand.

The court finds no merit in plaintiff's argument regarding consideration of the GAF score of 45 assigned by Dr. Bruce Bean.  Plaintiff argues that Dr. Bean's GAF score of 45 suggests an inability to keep a job and must, therefore, be discussed in the decision.  (Pl. Br. 14)(citing Lee v. Barnhart, No. 03-7025, 2004 WL 2810224 at *3, 117 F. App'x 674, 678 (10th Cir. Dec. 8, 2004)(unpublished); and, Brant v. Barnhart, 506 F. Supp. 2d 476, 483 (D. Kan. 2007)).  However, plaintiff's argument overstates the law.

In its unpublished decision in Lee, the Tenth Circuit noted that the ALJ failed to apply the Commissioner's psychiatric review technique to determine the severity of plaintiff's mental

impairments at step two of the evaluation process, but instead relied upon the psychiatric review technique form completed by a state agency physician who failed to consider portions of an examining physician's report which were contrary to the ALJ's decision and included a GAF score of 48. Lee, 674 F. App'x at 678. The Lee court acknowledged that a low GAF score does not necessarily indicate a "severe" impairment, but noted that a GAF score of fifty or less suggests an inability to work. Id. It concluded, "In a case like this one, decided at step two, the GAF score should not have been ignored." Id.(emphasis added).

An unpublished decision of the court of appeals is of no precedential value, and should be cited only for its persuasive value. 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The court finds no persuasive value in the Lee opinion in the circumstances presented here.

As did the Lee court, the district court in Brant noted that "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere." Brant, 506 F. Supp. 2d at 483. The American Psychiatric Association's explanation for GAF scores in the range of 41-50 is as follows: "**Serious symptoms** (e.g. suicidal ideation, severe obsessional rituals, frequent

shoplifting) **OR any serious impairment in <u>social</u>, occupational, or <u>school</u> functioning** (e.g., <u>no friends</u>, unable to keep a job)." DSM-IV-TR, at 34 (bold in original, underlines added for emphasis). Thus, the DSM-IV-TR reveals that a GAF score in the range of 41-50 may be the result of serious symptoms <u>or</u> serious impairment in <u>social</u>, <u>occupational</u>, or <u>school</u> functioning and is by no means <u>necessarily</u> the result of an inability to keep a job. Because a GAF score may not relate specifically to the ability to work, a score in the range 41-50 "standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities." <u>Eden v. Barnhart</u>, No. 04-7019, 2004 WL 2051382 at *2, 109 F. App'x 311, 314 (10th Cir. Sept. 15, 2004)(unpublished).

The courts in <u>Brant</u> and <u>Lee</u> stated that "A GAF score of fifty or less, however, does suggest an inability to keep a job," the <u>Brant</u> court noted that "the ALJ should also consider the GAF scores," and the <u>Lee</u> court found error in ignoring the GAF score. However, those courts' discussions were based upon the facts of those cases, and neither court found a rule that in every case, an ALJ must mention a GAF score of fifty or less. <u>Lee</u>, 117 F. App'x at 678; <u>Brant</u>, 506 F. Supp. 2d at 483.

An ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he

-15-

chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton, 79 F.3d at 1009-1010. The GAF score of 45 occupies only a minor place in Dr. Bean's report. It occurs only in the "<u>DIAGNOSTIC IMPRESSION</u>" section of the report in which Dr. Bean classified his diagnosis in each of five axes, <u>i.e.</u>, "AXIS V: 45." (R. 221). As both plaintiff and the Commissioner implicitly accept, Axis V of a multiaxial assessment consists of the clinician's assigned GAF score. DSM-IV-TR, 27-36. But, Dr. Bean's report does not mention "Global Assessment of Functioning" or "GAF," and there is no discussion or explanation of his Axis V diagnosis. Beyond the bare diagnosis, GAF is simply not mentioned by the psychologist. Nothing in the record of this case suggests that Dr. Bean's GAF score, standing alone, with no specific discussion in his report, is uncontroverted or significantly probative evidence which must be discussed by the ALJ. <u>See also</u>, <u>Caldwell v. Astrue</u>, No. Civ. A. 09-2150, slip op. at 11-13 (D. Kan. Feb. 1, 2010)(GAF score, standing alone, is not significantly probative evidence)(<u>adopted by the District Ct.</u> Feb. 18, 2010).

Concerning evaluation of Dr. Edwards's opinion, the court will not write at length, but will briefly outline the law with regard to a finding that the opinion of a treating physician is "based primarily on the subjective statements of the claimant." (R. 16). "In choosing to reject the treating physician's

assessment, an ALJ may not make speculative inferences from medical reports." McGoffin, 288 F.3d at 1252. Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based primarily on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004). Properly reached, such a conclusion must be based upon evidence taken from the physician's records. Victory v. Barnhart, No. 03-7129, 2005 WL 273302 at *2-3, 121 F. App'x 819, 823-24 (10th Cir. 2005)(unpublished). Upon remand, if the Commissioner discounts Dr. Edwards's opinion because it was based upon plaintiff's subjective complaints, he must cite the record evidence which supports that conclusion.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within fourteen days after being served with a copy. Failure to timely file objections with the court will be

deemed a waiver of appellate review. <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>4th</u> day of May 2010, at Wichita, Kansas.

<u>s:/   Gerald B. Cohn</u>
**GERALD B. COHN**
**United States Magistrate Judge**
